Our next case is number 231166, Joshua Michaels v. Sassers Glass Works, et al. Good morning. May it please the court, my name is Jason Tenenbaum. I represent the plaintiff appellant in this case, Joshua Michaels, in regards to a summary judgment motion that was granted dismissing our entire second amended complaint. First, I want to thank the panel for granting us oral argument here. This case, sorry, this case is a discrimination case brought into Title VII under 1981. I believe this case brings apart or at least presents many, I want to call fundamental civil practice issues. The first civil practice issue that we see a lot of, in my practice at least, of the 1981 and Title VII cases throughout the federal courts are whether or not judges are engaging in fact determination or whether they're leaving disputed highly tribal issues of fact for the jury to decide in the trial. I have, if I may, a question precedent to that, which is whether you actually pleaded a 1981 hostile work environment claim. So I believe, and I understand where you're coming from here, and I do believe that the pleadings were a little bit messy. However, I will note though that if we look at Bell Atlantic, what we're looking for is whether there's enough facts to state a claim for relief. 1981 is a penumbra. It's a statute. 1981 in and of itself, by pleading 1981, you essentially are setting forth a hostile work environment of discrimination claim and retaliation based upon the facts that are within the pleadings. So even if the pleadings could have been stronger, could have been more specific, the question that this court has to answer, I believe, is whether or not if you look at the facts of the case, and again, we're in federal court, which requires well pleaded, factually specific a pleading of the Bell Atlantic under Ashcroft. I do believe that despite some of the wording that was in there, there was definitely notice. The parties were on notice. It was definitely pleaded. Essentially, this case through the discovery, it was well aware that this was in large part a hostile work environment claim. Although you pleaded hostile work environment for Title VII and the Florida Civil Rights Act very specifically. So why would either the district court or the employer have any reason to think that you were somehow impliedly pleading every possible cause of action under Section 1981, where you've been very specific in those other statutory claims? Look, the question that you raise and the answer to be raised is whether or not. So I understand what you're saying here, but the question I think really is, is whether or not a factual specific pleading in one portion automatically leads to an omission. I understand what this court and what the district court impliedly, I believe, was stating that it was not specifically pleaded. But again, I would note if we look at an elemental approach and we look at paragraphs 44, 45, 46, 47, 49 to 52, even again, Your Honor, without the specificity, I believe that the parties were on notice of it. So again, as I indicated previously, there were some drafting issues. I will obviously admit that, but I do believe there were on notice of it. And I do understand what Your Honor is saying, that it was specific on one part but not the other. I also do believe that in 1981, just in terms of the statute, the structure, and the case law interpretation, is a more general pleading, whereas Title VII has different, my understanding of reading it, it has different portions of what you would plead. I just would indicate that, Your Honor. So you pointed and you cited to several paragraphs of the complaint. So looking at what the one that I kind of focused in on was paragraph 46. And there you state that employees possessed the authority to affect the terms, conditions, and privileges of plaintiff's employment. But I guess I'm struggling to see how that paragraph in particular would get you there. I know we have a Hulsey case where there, in dealing with this issue, the complaint had a statement that the employees exhibiting discriminatory conduct towards plaintiff possessed the authority to affect the terms, conditions, and privileges of plaintiff's employment. That seems to go a lot further in giving notice to the parties and the court that that was a hostile work environment claim. How does 46 in your complaint do it? And if I'm being myopic and should be expanding to language and other paragraphs, please let me know. I would like the court to look at the actual factual presentation besides looking at 46. So I'm not saying Your Honor is myopic. I'm not accusing you of that. And I'm not accusing anyone here being myopic. I was accusing myself, so. I do believe, Judge, again, using the case that you noted compared to Paragraph 46, obviously what you set forth and what the circuit set forth was sufficient. It's a little bit more narrow here. But I do believe you need to extrapolate the facts. I believe you were to look at the facts. Well, in terms of the facts that you alleged, I'm looking at Paragraph 35 that says Johnson created a hostile environment by making racial epithets. That's the basis of the hostile work environment claim, right? That's definitely the... But then it goes on to say that both statements were made on or about September 15th, 2020 by Johnson. Correct. How does that allege a severe or pervasive pattern of conduct? If two statements weighed on one day? Well, again, if we're going to do that, I would like then to look then at what was pleaded, not so much pleaded, but was developed as a summary judgment record, if we can do that, which I believe would indicate that there was several, if this Court's well aware of the record here, there was several uses of improper wordings and improper gestures of  It seems to me that what you're arguing is that a plaintiff can outline facts at a very high level and then make no specific claims about those facts. And the district court is not only supposed to figure out what claims would fit those facts the best, but also scour through the record to determine if there's something in the record that's not in the complaint or the briefing that would support those claims that the district court came up with. That is not the standard, right? I believe the briefing, if we're talking about the briefing throughout the history of this case and through what was indicated about five minutes ago regarding notice of a hostile work environment, albeit not specifically pled under a 1981 penumbra, I do believe there was notice there. Again, I do believe that the two paragraphs, Your Honor, just prior that you read, again, that's not necessarily severe or pervasive per se. I do believe there was enough notice. And again, there were, I believe there were motions to dismiss at some point, they were resolved. I do believe the parties were well aware. If I can just move on to another issue, I think the other issue that in terms of the 15 employees in title seven, I do believe that is the other issue that I believe needs to be discussed here is that one employee says there's 15 employees, the supervisor, the protagonist in this, uh, antagonist, I'm sorry, in this employment dispute indicates there's 15 employees. And then really though, I mean, in his deposition, um, he was being pressed, he didn't know, and he was being pressed to, to guess. And he said maybe 15 people. I don't, how does that create a factual dispute when you have, um, Sherry Johnson who has provided sworn testimony to the exact number of employees and, and it's coming below the threshold. I understand that. But Sherry Johnson is also an interested witness, also a wife. And quite frankly, if we are to actually look at the standard or look what was alleged, I mean, I guess, I know he said, I guess it's 15, but he said there's 15. I guess my question for the panel and for the district court was why can't a jury make that decision? Uh, you know, but you have, the jury has to have evidence, right? You, a jury can make inferences where it's not clear or credibility determinations. And if you had say the IRS records of how many people had been paid by the firm that year or something else versus the testimony that there were fewer than 15, then fine. The jury could rely on those IRS records. But someone saying, I don't know. And then finally agreeing, maybe 15. I don't see how a jury could actually use that testimony to make a different inference. Well, again, he was a supervisor. He was with the company for many years. You know, there might've been employees that were not necessarily set forth in the records. There are things such as off the books employees. I do believe that if he said there's 15, that should lead a jury to believe there could have been off the books. There could have been other employees that were not W2s. It might've been 1099s. The fact of the matter is he did give a statement as an admission. He is a supervisor, I do believe, notwithstanding whatever documentary evidence that they wish to, you know, provide to substantiate the difference. But here's, here's the testimony. The question was asked of Mr. Johnson, how many people would you say work at Sasser's Glass? About, I don't really know. Approximately 10. Would you say there were more than 20 people who worked for Sasser's Glass when Joshua Michaels? No. More than 15? Maybe 15. And again, how does that, how is that evidence to what Judge Grant has just said? How is that evidence that we would then say goes, goes to a jury to make a determination when we have Sherry Johnson who has the information and has provided sworn testimony? I know you're saying she's an interested party. Of course she is. She's a wife. Of course she is. But she has provided sworn testimony. Where's the evidence that gets you to the factual dispute? Again, I would, I would rely on the fact that this gentleman who's her husband said maybe 15. Again, that's a sworn statement that was under oath. Maybe it was equivocal, but if we're looking at the evidence, the statement, the testimony, deposition testimony is evidence. Evidence isn't just documentary. And we look at it in the light most favorable to my client, I tend to think that should go to the jury. That's just my thought. I guess I'm out of time now. Thank you. May it please the court. My name is David Gobio, counsel for Eppley's, Sasser Glass Works, Jeff Johnson, and Lloyd Pender. As you pointed out, you know, we certainly take a position there was no hostile work environment claim pled under 1981. And that's after three amendments to the complaint. And ultimately the discrimination and retaliation claims were decided upon substantively. 1981, Title VII, and Florida Civil Rights Act all have the same standards for those types of claims. The law in this area is not unsettled. Employment discrimination cases can use direct evidence, circumstantial evidence from the framework laid out in McDonnell Douglas from the Supreme Court in 1973, or convincing mosaic standard. The appellant waived everything except for a claim of direct evidence and the district court found that he had not presented direct evidence of race discrimination. So there was no discussion of the severe pervasive standard in the district court because the hostile work environment claims under Title VII and Florida Civil Rights Act were not available to the appellant. We have authority saying that the plaintiff doesn't necessarily have to plead the theory of the case under 1981 or Title VII. So district treatment versus hostile work environment. Given that precedent, can this claim, why can't this complaint be read as alleging a 1981 hostile work environment claim? I think because of the specificity that your honors had pointed out earlier that there was very specifically hostile work environment claim under Title VII and under Florida Civil Rights Act and there is a difference between those two in 1981 and that's the employee threshold. So it would make more sense to put the defendants on notice that that's a specific claim that they're pursuing. But I would also say as a backup, even if that were the case, we did argue substantively hostile work environment at the summary judgment standard. But the district court construed the complaint as not raising a 1981 hostile work environment claim. Isn't that right? Yes, your honor. That's correct. And so as the discussion that you just had with my colleague, the appellant never met his burden of demonstrating 15 or more employees. Even if Jeff Johnson had said, yes, there were 15 employees at Sasser's, he didn't say there were 15 employees for 20 weeks in a calendar year. So even that evidence alone that they're claiming was said wouldn't be enough to meet that threshold. Appellant also failed to demonstrate a prima facie case of retaliation because he never engaged in protected conduct by complaining. Certainly, appellee took the position he wasn't fired, but to the extent that he was fired, he didn't show any kind of causal connection with anything that could be construed as a protected activity. As the district court found, refusing to engage in an argument over tools would not be a protected conduct. And the appellant himself acknowledged that that was not related to race. It was an argument over tools and the race discussion happened after that fact. And he ultimately waived his arguments with respect to legitimate business reason and pretext by not even briefing on those issues. He similarly waived mosaic theory, didn't argue any kind of cat's paw theory, intentionally waived the McDonnell Douglas circumstantial evidence, failed to argue pretext at the court below. And as Judge Altman pointed out, the appellant could not even show pretext where he testified that he said to the company, I said you're a dumb motherfucker, I said you're an aggravating stupid asshole man, I said fuck you, I told a man in front of others, and then he said I told them to go F themselves and I got in the car and left. So, you know, that pretext argument wouldn't be available considering the appellant's misconduct. The appellant presents issues as a district court erring in an engaging credibility determination. So the issues in this brief are the number of employees Sasser's had, whether appellant quit or was fired, the terms and conditions of the company's employees, and whether appellant was subjected to retaliation. The court engaged in none of that fact finding. What Judge Altman held was that the appellant failed to demonstrate the number of employees at the company. He actually assumed that appellant was fired rather than address the issue of resignation versus being terminated. And he analyzed retaliation based on whether appellant's alleged activities were protected as opposed to whether they had occurred. We addressed the number of employees issue, 1981 issue, and the protected conduct that he's alleging as the choosing not to engage in an argument and then complaining over him saying he complained about a pay issue. But the district court did not engage any fact finding on these issues. He also said that when it came to the actual ruling of the district court that the use of the racial slurs was not direct evidence of discrimination. Appellant cited no 11th Circuit authority finding that simply the use of the terms alone with no correlation to an employment decision would be enough to be direct evidence of race that were addressed were the personal liability for Pender and Johnson. Appellant is the one who's claiming that he was fired by Lloyd Pender and not Johnson who is the person he's claiming made the statements as well. So appellant respectfully asked this court to affirm the decision of the district. Do you know if Johnson has been disciplined based on these statements? So Johnson took the position that he didn't say the statements, your honor. That's right. The briefing was even if he had said the statements, it's not enough, right? Direct evidence or hostile work environment. Thank you. Council. We understand your case. Rebuttal. Mr Tenenbaum, you have six minutes. I can I can read a room. I just want to note your honors. We're going to be talking about the hostile work environment based on what you indicated, Judge Pryor. Again, I'm not going to be a dead horse. I do believe that at least under the 1981, as we've now discussed the briefing, both our arguments here, I do believe that 1981 case should be evaluated under the hostile work environment. And I do believe under the briefing that there is, at least on the summary judgment motion, there's sufficient factual issues if we do get to that point. So I would again ask that this court reverse. Thank you for your time. Court is adjourned until 9 a.m. tomorrow morning.